Miller's November 15, 1997 motion for delayed reconsideration, which the Ohio courts viewed as a successive Rule 26(B) application, was a step in the direct review process or a collateral attack and what effect, if any, it had on the statute of limitations.

### III.

For the foregoing reasons, we REVERSE the district court's dismissal of Miller's petition as untimely and REMAND for further proceedings consistent with this opinion.

---

Cir. 1999).

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0333P (6th Cir.)
File Name: 02a0333p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

RALPH MILLER,
    *Petitioner-Appellant,*

    *v.*                  No. 00-3656

TERRY COLLINS, Warden,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 98-00907—S. Arthur Spiegel, District Judge.

Submitted: June 14, 2002

Decided and Filed: September 26, 2002

Before: MARTIN, Chief Circuit Judge; KEITH and
KENNEDY, Circuit Judges.

———————

**COUNSEL**

**ON BRIEF:** Stephanie L. Watson, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee. Ralph Miller, London, Ohio, pro se.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Chief Circuit Judge.   Ralph Miller, *pro se*, appeals the district court's dismissal of his habeas corpus petition as not timely filed within the evolving meaning of section 2244 of the Antiterrorism and Effective Death Penalty Act.  We REVERSE and REMAND for further proceedings consistent with this opinion.

I.

The facts at issue in Miller's appeal involve a complex procedural history with at least fifteen motions and/or appeals before the Ohio Court of Appeals and the Ohio Supreme Court.  The general time period starts with Miller's conviction on September 15, 1995, and ends with the filing of his habeas petition in the fall of 1998.  In order to determine whether Miller's petition was timely filed under section 2244's one-year statute of limitations, we must assess Miller's actions during this time period.

On September 9, 1995, after a Hamilton County jury found Miller guilty of one count of robbery and one count of grand theft, a Hamilton County Court of Common Pleas judge sentenced Miller to eleven to fifteen years.  Miller appealed his conviction to the Ohio Court of Appeals on January 16, 1996, claiming insufficiency of the evidence on the robbery count. On May 17, 1996, the Ohio Court of Appeals affirmed the trial court's decision.  Miller did not appeal this decision to the Ohio Supreme Court.

On July 10, 1996, Miller sought leave to file a delayed appeal in the Ohio Supreme Court.  The court permitted his delayed appeal and Miller again argued insufficiency of the evidence.  On January 15, 1997, the Ohio Supreme Court dismissed Miller's delayed appeal as "not involving any substantial constitutional question."

a step in the direct review process, *see Bronaugh*, 235 F.3d at 286, or as a "properly filed" post-conviction petition, *see Searcy*, 246 F.3d at 519.  *See Scott v. Collins*, 286 F.3d 923, 928 (6th Cir. 2002) (state waived statute of limitations defense by failing to raise it in response to petitioner's writ)*; see also Urbina v. Warden*, 270 F.3d 292, 295 (6th Cir. 2001) (state waived argument that petitioner failed to exhaust administrative remedies); *see generally* 19 Moore's Federal Practice § 205.02[1].  And although absent from its appellate brief, the State of Ohio accepted the statute of limitations was tolled from August 4, 1997 to October 29, 1997, the period during which the Ohio Supreme Court had Miller's motion for reconsideration of judgment under review.

In light of the above, we find that the statute of limitations was tolled while Miller's motion for relief from judgment was pending in the Ohio courts.  Thus, the statute of limitations was tolled from June 2, 1997, the date Miller filed his motion for reconsideration of judgment, until October 29, 1997, the date the Ohio Supreme Court dismissed Miller's appeal. Recalling that the statute of limitations was equitably tolled from November 26, 1996 until May 14, 1997, we find that as of October 29, 1997, Miller expended twenty-six days – the eight days prior to his delayed appeal filing and the eighteen days between the end of equitable tolling and the filing of his motion for reconsideration of judgment – of the one-year statute of limitations.  Three hundred twenty-seven days then elapsed between October 30, 1997 and September 22, 1998. Added to his prior twenty-six days, we see that Miller expended three hundred fifty-three days before filing his habeas petition.  Therefore, we hold that Miller's habeas petition, which he swore under penalty of perjury was presented to prison officials on September 22, 1998, was timely filed under the prison mailbox rule of *Houston v. Lack*, 486 U.S. 266 (1998).[8]  Thus, we need not address whether

---

[8] Although the record is unclear what date Miller actually presented his petition to prison officials, we accept September 22, 1998 as the date because Miller swore, under penalty of perjury that he presented the petition on that date.  *See Town v. United States*, 190 F.3d 468, 469 (6th

C.

The State of Ohio argues that neither Miller's May 14, 1997 motion to proceed to judgment nor his November 19, 1997 motion for delayed reconsideration of his Rule 26(B) application tolled the statute of limitations because neither application was "properly filed" for purposes of 28 U.S.C. § 2244(d)(2). In particular, Ohio claims the applications were not "properly filed" because (1) Ohio does not permit successive Rule 26(B) applications; (2) Miller's applications were untimely; (3) Miller's filings did not concern his claim of constitutional error.[7]

Importantly, however, the State of Ohio does not address Miller's June 2, 1997 motion for relief for judgment in either its response to Miller's petition or in its appellate brief. Therefore, we find that the State of Ohio waived any argument it could have asserted that Miller's motion for relief from judgment did not toll the statute of limitations either as

---

court suggested that Miller's late receipt may have "triggered the applicability of 28 U.S.C. § 2244(d)(1)(B), which provides the statute of limitations does not begin to run until 'the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action.'" Op. at 5 (quoting 28 U.S.C. § 2244(d)(1)(B)). Relying on this provision, the district court appeared willing to toll the statute of limitations until May 14, 1997, but ultimately dismissed Miller's petition because it did not believe that Miller's subsequent state court filings tolled the limitations period. We do not rely on section 2244(d)(1)(B) because that section addresses when direct review concludes, and because we do not conclusively resolve the question of when direct review concluded in this case, we find that equitable tolling is the more prudent course of action.

[7]Ordinarily, an application is "properly filed" if its "delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.E.2d 213 (2000). Importantly, "whether an application has been 'properly filed' is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar." *Id.* (emphasis in original).

---

Shortly after seeking leave to file a delayed appeal, Miller also sought to reopen his appeal in the Ohio Court of Appeals on ineffective assistance of appellate counsel grounds pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure.[1] Miller filed his application on August 13, 1996, and in an order dated November 26, 1996, the Ohio Court of Appeals ruled that Miller's claim was barred by *res judicata* because he could have argued ineffective assistance of appellate counsel in his delayed appeal to the Ohio Supreme Court. The court also concluded that Miller did not establish a colorable claim of ineffective assistance of counsel. Miller alleges that he did not receive a copy of this order until May of the following year.

Believing that the Ohio Court of Appeals had not ruled on his Rule 26(B) application, Miller next filed a "Motion to Proceed to Judgment" in the Ohio Court of Appeals on May 7, 1997. A week later, Miller received a letter from the Ohio Court of Appeals notifying him of their decision regarding his Rule 26(B) application. On June 2, 1997, Miler then filed a "Motion for Relief from Judgment." The Ohio Court of Appeals denied that motion on June 30, 1997. Miller then timely appealed that decision to the Ohio Supreme Court, which dismissed the appeal on October 29, 1997.

On November 19, 1997, Miller filed an "Application for Delayed Reconsideration in Instanter Pursuant to App. R. 26 and App. R. 14(B)" in the Ohio Court of Appeals. The Court of Appeals construed the motion as a second Rule 26(B) application to reopen his appeal and rejected it because it "contain[ed] the same arguments which he raised and which

---

[1]Ohio R. App. P. 26(B)(1) states:

A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

this court did address in his previous application for reopening." Miller's subsequent appeal to the Ohio Supreme Court was denied on August 26, 1998.

Miller swore under penalty of perjury that he presented his habeas corpus petition to prison officials on September 22, 1998. His petition, which was filed by prison officials on November 30, 1998, presented two grounds for relief: (1) ineffective assistance of counsel; (2) insufficiency of the evidence on his robbery conviction.

On November 16, 1999, the district court initially dismissed Miller's petition with prejudice, declined to issue a certificate of appealability and certified that any appeal would not be taken in good faith. Thereafter, the district court amended its decision and issued a certificate of appealability as to whether Miller's petition was time-barred. On appeal, this court remanded Miller's petition to the district court for reconsideration in light of *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.E.2d 542 (2000). On remand, the district court stood by its amended opinion, and on October 23, 2001, a Rule 34 panel declared this case unfit for Rule 34 disposition.

## II.

In reviewing a habeas petition, we review a district court's legal conclusions *de novo* and its factual findings for clear error. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999).

## A.

A conviction becomes final for purposes of the one-year Antiterrorism and Effective Death Penalty Act statute of limitations upon "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The State of Ohio argues that Miller's conviction became final on July 1, 1996, forty-five days following the Ohio Court of Appeals' May 17, 1996 decision on direct appeal affirming Miller's conviction. With respect to Miller's filings after this date, the State of Ohio

to judgment approximately nine months after his Rule 26(B) filing.

Miller also acted promptly after receiving notice of the appellate court's decision. Less than three weeks after receiving notice, Miller filed a motion for relief from judgment on June 2, 1997. When the Court of Appeals denied that motion, Miller timely petitioned the Ohio Supreme Court for review. Miller then filed a motion for delayed reconsideration in the Ohio Court of Appeals and when this motion was denied, Miller again appealed to the Ohio Supreme Court. To be sure, there is an argument as to whether these *pro se* filings actually tolled the section 2244 statute of limitations, and thus, whether, Miller, proceeding *pro se*, pursued the best technical course of action. But it cannot be said that Miller did not exercise reasonable diligence in attempting to protect his rights.

In light of Miller's lack of notice, his diligence in pursuing his claims, and the State of Ohio's failure to argue that it will be prejudiced if this limited period of time is tolled, we hold that the section 2244 one-year statute of limitations was tolled from November 26, 1996, the date of the Ohio Court of Appeals' decision regarding Miller's Rule 26(B) application, until May 14, 1997, the date Miller received notice of the decision. *See Woodward v. Williams*, 263 F.3d 1135, 1143 (10th Cir. 2001) ("[A] prisoner's lack of knowledge that the state courts have reached a final resolution of [her] case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter."); *Philips v Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (per curiam) ("A delay in receiving notification [that petitioner's appeal has been denied] . . . could qualify for equitable tolling."). This does not end our inquiry, however, for unless some of Miller's subsequent state court filings tolled the statute of limitations, Miller's habeas petition is nevertheless time-barred.[6]

---

[6] Although the district court was reluctant to employ equitable tolling, it nevertheless expressed concern regarding Miller's failure to receive the Ohio Court of Appeals' decision. Instead of equitable tolling, the district

legal requirement for filing the claim. *Id.* at 1008. These factors are not necessarily comprehensive and they are not all relevant in all cases. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Ultimately, the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis. *Id.*

In the present case, we assess only the limited time period from November 26, 1996, the date the Ohio Court of Appeals rendered its decision regarding Miller's initial Rule 26(B) application, and May 14, 1997, the date Miller finally received notice of this decision. While in the normal course a petitioner who claims he did not receive a copy of a state court's decision may face obstacles in supporting his account, we are satisfied that in the present case, Miller has adequately demonstrated that he did not, in fact, receive a copy of the Ohio Court of Appeals' order and thus lacked knowledge of its decision. Miller not only swore under penalty of perjury, his conduct directly corroborates his account because on May 7, 1997, he filed a motion to proceed to judgment asking the court to rule on his application. Moreover, as noted above, the State of Ohio does not question Miller's account. Therefore, we are satisfied that Miller did not have knowledge of the Ohio Court of Appeals' decision regarding his Rule 26(B) application.

We also find that Miller acted diligently to protect his rights both before and after receiving notice. Believing that the Ohio Court of Appeals had not ruled on his Rule 26(B) application, Miller did not passively await decision, instead he filed a May 7, 1997 motion to proceed to judgment, asking the court to rule on his previous application. Given that the Ohio Court of Appeals considered Miller's sufficiency of the evidence appeal for five months, it was not unreasonable that Miller waited nine months before asking the court to rule on his application. From a litigant's perspective, it is a difficult, if not impossible endeavor, to estimate how long a reviewing court will take to decide a particular motion. Thus, we believe Miller acted reasonably in filing his motion to proceed

acknowledges that Miller's delayed appeal was a properly filed collateral attack within the meaning of section 2244(d)(2) and therefore tolled the one-year statute of limitations while it was pending. *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001). The State correctly observes that Miller's delayed appeal did not toll the statute of limitations for the ninety day period he could have sought review in the Supreme Court. *Isham v. Randle*, 226 F.3d 691, 695 (6th Cir. 2000) ("Section 2244(d)(2) does not toll the limitations period to take into account the time in which a defendant could have potentially filed a petition for certiorari with the United States Supreme Court following a state court's denial of post-conviction relief.").

As to Miller's Rule 26(B) application, the State of Ohio also argues that it tolled the one-year statute of limitations while it was pending, but because it overlapped with the tolling from Miller's delayed appeal in the Ohio Supreme Court, it did not have any practical tolling effect. This argument potentially skips a step in the analysis. In *Bronaugh v. State of Ohio*, 235 F.3d 280, 286 (6th Cir. 2000), we ruled that there was no need to assess whether an untimely Rule 26(B) application was "properly filed" within the meaning of section 2244(d)(2) because a Rule 26(B) application was a step in Ohio's direct review process. In reaching this conclusion, we nonetheless emphasized that the petitioner "could not benefit from his delay in bringing a Rule 26(B) application to reopen direct appeal by requesting that § 2244(d)(1)(A) not begin until after his Rule 26(B) application has run its course through the courts." *Id.* at 286. Rather, "the statute of limitations is tolled only for that period of time in which the Rule 26(B) application is actually pending in the Ohio courts." *Id.*

In our view, there are two ways to read *Bronaugh*. The first, which is the State of Ohio's position in this case, is that a Rule 26(B) application is technically part of the direct review process, but in effect, it functions as a collateral attack because it only tolls the statute of limitations during pendency, it does not affect the conclusion of direct review and thus does not postpone the initial running of the one-year limitations period. The other possible interpretation is that because a Rule 26(B) application is part of the direct review process, a conviction does not become final pursuant to section 2244(d)(1)(A) until the Ohio courts dispose of a petitioner's Rule 26(B) application. Thus, a timely application does not merely toll the statute of limitations, the limitations period does not begin to run until its conclusion. Therefore, although the State of Ohio argues that Miller's apparently timely Rule 26(B) application only tolls the statute of limitations,[2] there is an argument that Miller's direct appeal did not conclude, and the one-year statute of limitations did not begin to run until the Ohio courts disposed of his Rule 26(B) application.[3]

We need not resolve this question in the present case, however, because it does not affect our resolution of whether Miller's habeas petition was timely. We therefore assume for purposes of this appeal that the State of Ohio is correct, and that even a timely Rule 26(B) application only tolls the one-year statute of limitations. We proceed, then, under the assumption that Miller's conviction became final on July 1, 1996, and that by January 15, 1997, the date the Ohio

---

[2] A Rule 26(B) application must ordinarily be filed within ninety days of journalization of the appellate court's judgment. *See* Ohio R.App.P. 26(B). The Ohio Court of Appeals denied Miller's initial appeal on May 17, 1996 and Miller filed his Rule 26(B) application on August 13, 1996, just under ninety days later.

[3] If we ruled that the one-year statute of limitations period did not begin until after the Ohio courts disposed of Miller's Rule 26(B) application we would, of course, have to pinpoint when the Ohio courts disposed of Miller's application.

Supreme Court denied his delayed appeal, Miller had used eight days[4] of the one-year limitations period.[5]

### B.

Where the facts are not in dispute, we review a district court's decision declining to apply equitable tolling *de novo*. *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001). In the present case, the State of Ohio does not contest Miller's factual account.

Miller contends he should receive the benefit of equitable tolling for the period from November 26, 1996 until May 14, 1997, the period during which he did not have notice of the Ohio Court of Appeals' denial of his Rule 26(B) application. In response, the State of Ohio argues that Miller is not entitled to equitable tolling because he has not carried his burden under *Dunlap v. United States*. In *Dunlap*, which was decided subsequent to briefing and the district court's decisions, we held that the general equitable tolling test of *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988) also governs equitable tolling claims in the habeas corpus context. 250 F.3d at 1008-1009. In applying this test, we look to the following five factors: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) petitioner's reasonableness in remaining ignorant of the

---

[4] In computing time for statute of limitations purposes under section 2244(d), we follow Rule 6's instruction that "the day of the act, event, or default from which the designated period of time begins to run shall not be included." *Bronaugh*, 235 F.3d at 285 (quoting Fed. R. Civ. P. 6(a)). Thus, we begin our calculation with July 2, 1996, the day after Miller's conviction became final.

[5] Along the lines suggested in *Bronaugh*, we continue to assume that "section 2244(d)(1)(A) cannot toll the statute of limitations for an additional ninety days in which to file a petition for a writ of certiorari in the United States Supreme Court following the Ohio Supreme Court's denial of [a] Rule 26(B) application." *Bronaugh*, 235 F.3d at 286 n.10.